UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

---

JANE DOE,

*Plaintiff*,

v.

GEFFEN RECORDS and
CAE CARTIER,

*Defendant(s)*.

Case No.:

**COMPLAINT**

---

Plaintiff Jane Doe, by and through her undersigned counsel, hereby states her Complaint against Defendants Geffen Records and Cae Cartier upon personal knowledge and information and belief:

## PARTIES

1.      Plaintiff Jane Doe is an individual.

2.      Defendant Cae Cartier is an individual.

3.      Upon information and belief, Defendant Geffen Records is a foreign for-profit corporation with a principal place of business and/or registered address for service at 2220 Colorado Ave., Santa Monica, CA 90404, and that is authorized to conduct business within Florida and is in fact conducting business within Florida.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and supplemental

jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state, local, and/or common law.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the acts and omissions giving rise to this Complaint occurred in this District.

6.      On or about September 29, 2025, Plaintiff filed a Charge of Discrimination against Defendant Geffen Records with the Florida Commission on Human Relations and the EEOC, and has received a right to sue letter based on the events and allegations set forth herein.

## STATEMENT OF FACTS

7.      In Spring 2025, musical artist Cae Cartier, with the actual and/or apparent authority of Geffen Records, invited Ms. Doe to travel to Miami and collaborate on an album cover.

8.      Upon information and belief, Ms. Doe would be paid for her work by Geffen Records, as Carter referenced the budget he received by Geffen Records following the events described below.

9.      Ms. Doe eventually agreed to meet Cartier in Miami from April 18-19, 2025.

10.     Upon her arrival in Miami for the scheduled photo shoot, Cartier invited Ms. Doe to have dinner the night before to discuss the logistics of the photo shoot, and Ms. Doe felt compelled to accept given the employment opportunity.

11.     Following this dinner, Cartier became more physically forward and aggressive, attempting to kiss her in a car ride after insisting the two go to a club, and trying to touch her breasts under her clothes and between her thighs.

12.     She explicitly rebuffed all of Cartier's advances. Ms. Doe was unsure of how to handle the situation – Cartier was offering her the business opportunity to be on the cover of an album, and she also had all her belonging at his apartment.

13.     After returning to Cartier's residence, Ms. Doe stated that she was tired and wanted to go to sleep, given their scheduled photo shoot the following day.

14.     Ms. Doe observed that Cartier had prepared a bed for himself on the couch, as he had indicated he would, and she fell asleep.

15.     The following day, around noon, Ms. Doe was awakened by the sensation of Cartier forcibly spreading her legs and penetrating her vaginally with his penis. She also discovered that her pants had been removed.

16.     This was unexpected, as Ms. Doe is not a heavy sleeper and did not consume enough alcohol the night before to be "blacked out." Nevertheless, she felt drowsy and not fully awake.

17.     Ms. Doe recalls placing her hand on his stomach in an attempt to push him away. Cartier responded by grabbing her hips, flipping her onto her stomach, and penetrating her from behind.

18.     Ms. Doe pushed herself forward, rolled off the bed, and fled to the bathroom, feeling disoriented and unsure of what to do.

19.     Cartier followed her to the bathroom, pulled down his pants, and exposed his penis to her face.

20.     Ms. Doe pushed him away, closed her eyes and turned her head, and pleaded with him to stop and give her pants so she could get dressed.

21.     Cartier handed her a pair of shorts. Ms. Doe then locked both bathroom doors, sat in the shower, and experienced a panic attack, crying for approximately 10 to 20 minutes.

22.     Following this, the two had a conversation in which Cartier continued his attempts to comfort Ms. Doe or dissuade her from her feelings. She repeatedly pushed him away, insisting that his behavior was unacceptable.

23.     He persisted in trying to manipulate her and change the subject. When Ms. Doe continued to cry and express her distress, Cartier began recording her and asked, "So did I force you?" A video with audio from this moment captures Ms. Doe's visible distress. She avoided using the word "rape" out loud, fearing Cartier's reaction.

24.     Ms. Doe informed Cartier that she wanted to leave. He initially resisted, grabbing her arm and attempting to pull her back onto the bed.

25.     After Ms. Doe gathered her belongings and tried to leave, Cartier accompanied her to the elevator but then grabbed her arm, attempting to pull her back inside, stating, "No, Ry, you can't leave like this."

26.     Cartier then took Ms. Doe's suitcase, prompting her to follow him.

27.     Ms. Doe remained in a dissociated state, sitting and crying. Cartier then positioned himself on top of her, straddling her, and again tried to kiss and comfort her.

28.     Ms. Doe pushed him away multiple times, and was eventually able to leave.

29.     Cartier texted Ms. Doe following these events, noting his frustration with her and that she just "fucked [him] up with getting any more budgets approved by the label" that "just paid [her] $1k for basically nothing."

30.     Ms. Doe has suffered from severe emotional distress from these experiences.

## CAUSES OF ACTION

**CLAIM I: Violation of Trafficking Victims Protection Act (against all Defendants)**

31.     The Trafficking Victims Protection Act ("TVPA") creates a civil remedy by victims against perpetrators and others who benefitted financially from participation in a sex trafficking venture. *See* 18 U.S.C. § 1595.

32.     A TVPA claim must plead that the defendant "knowingly . . . benefits, financially or by receiving anything of value, from participation in a [sex trafficking venture,] while knowing . . . that means of force, threats of force, fraud [or] coercion . . . will be used to cause [a] person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(2).

33.     In addition to traditional sex trafficking ventures such as forced prostitution, the TVPA equally applies in simpler and less sensational situations to "defendants who have lured women, under false pretenses and with lucrative promises, for sexual purposes." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 516 n.5 (S.D.N.Y. 2018).[1]

34.     Here, upon information and belief, Cartier, through his position as a powerful celebrity and industry figure, used Ms. Doe to perform a commercial sex act.

35.     Upon information and belief, Cartier has a pattern and practice of financially and forcefully coercing individuals to perform sexual acts, including by traveling and recruiting victims across state lines.

36.     Geffen Records knowingly participated in and facilitated this venture in violation of 18 U.S.C. § 1591 by knowingly benefiting from and/or receiving value for the venture with

---

[1] Indeed, "Congress noted that 'trafficking in persons is not limited to the sex industry,' and that 'traffickers lure [people] into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models.'" *Id*. at 514 (citing Pub. L. No. 106-386 § 102, 114 Stat. 1488 (2000)).

knowing, or in reckless disregard of the facts, that Cartier would defraud, force and/or coerce sexual encounters from women like Plaintiff.

37.    As a result, Plaintiff experienced injury in the form of severe emotional pain and suffering, emotional distress and humiliation.

38.    For the reasons alleged above, Plaintiff seeks compensatory and punitive damages at an amount to be determined by trial, and an award of attorneys' fees, costs, and disbursements.

**CLAIM II: Negligent Hiring, Supervision, and/or Retention (against Geffen Records)**

39.    Plaintiff re-alleges and incorporates preceding paragraphs 1-30 as if fully set forth herein.

40.    At all times relevant, a servant-master relationship existed between Geffen Records and Cae Cartier such that Geffen Records controlled the means and manner of the performance of his job duties, including his conduct and interactions with Plaintiff.

41.    At all times relevant, a servant-master relationship existed between Geffen Records and Cae Cartier such that Geffen Records were required to act with reasonable care in the supervision of his job duties, including his conduct and interactions with Plaintiff.

42.    At all times relevant, a servant-master relationship existed between Geffen Records and Cae Cartier such that Geffen Records was required to act with reasonable care in their retention of Cae Cartier based on what they knew or should have known about his unfitness for employment, including a duty to take further action such as restricting his duties or discharging him.

43.    At all times relevant, Geffen Records' own negligence as Cae Cartier's employer created the risk of harm to Plaintiff, and, as a result, Geffen Records had a common-law duty to make a reasonable effort to avoid further harm to others, including Plaintiff.

44.     At all times relevant, Geffen Records also had a duty to protect its employees, including but not limited to Plaintiff, who was within the foreseeable orbit of risk of harm created by Cae Cartier because that risk was not readily discoverable by Plaintiff before the sexual misconduct described above.

45.     Upon information and belief, Geffen Records authorized Cae Cartier to work with Plaintiff.

46.     Upon information and belief, Geffen Records knew or should have known of Cae Cartier's proclivity for sexual misconduct and had a duty to investigate or otherwise take further action against the employee.

47.     Upon information and belief, Geffen Records knew, or in the exercise of reasonable care, should have known at all relevant times that Cae Cartier was unfit, dangerous, and a threat to the health, safety, and welfare of other employees, including Plaintiff.

48.     Given actual and/or constructive knowledge of Cartier's sexual misconduct, Geffen Records acted unreasonably in retaining him as an employee at all relevant times.

49.     At all times relevant, Geffen Records owed employees, including Plaintiff, a duty to exercise reasonable care in retaining safe and competent employees; to supervise an employee in the performance of his job duties; to conduct appropriate and thorough investigations into an employee's actions if notified of sexual misconduct; to conduct continuing due diligence, interviews, evaluations and investigations of an employee's job performance; to employ qualified, law abiding, stable, capable, and mentally and emotionally fit employees for duty who did not present a risk or danger; and to timely take corrective action against employees, including by terminating and/or discharging an employee, when it knew of or should have known of problems with the employee that indicated his/her unfitness to serve as an employee.

50.     At all times relevant, Geffen Records breached its duty or duties to Plaintiff by committing one or more of the following negligent acts or omissions, which directly and proximately caused Plaintiff's injuries:

        a.     Negligently and carelessly failed to supervise and/or monitor Cartier during his employment and with Plaintiff;

        b.     Negligently and carelessly failed to take corrective action against Cartier when Geffen Records knew or should have known that his conduct demonstrated an unfitness to serve as an employee;

        c.     Negligently and carelessly retained Cartier as an employee after Geffen Records knew or should have known that his conduct demonstrated an unfitness to serve as an employee;

        d.     Negligently and carelessly failed to take appropriate actions with regard to Cartier's employment;

        e.     Negligently and carelessly failed to terminate Cartier's employment;

        f.     Negligently and carelessly failed to take appropriate actions to prevent further sexual harassment and assaults of female employees;

        g.     Negligently and carelessly failed to implement and enforce Geffen Records' policies, procedures, and safety protocols;

        h.     Negligently and carelessly failed to notify police and/or law enforcement of criminal acts known to Geffen Records and their agents, servants, and employees;

        i.     Negligently and carelessly failed to have appropriate policies, procedures, and/or protocols in place that require all reported acts of sexual misconduct to be reported to police and/or law enforcement;

j. Negligently and carelessly failed to have appropriate policies, procedures, and/or protocols in place that required all employees to be terminated for sexual misconduct toward other employees; and

k. Negligently and carelessly committed other acts and omissions that increased the risk of harm to Plaintiff in ways that are not yet known to Plaintiff.

51. Plaintiff has suffered mental anguish from Geffen Records' actions and inactions.

52. As a direct and proximate result of the Geffen Records' failure to act with reasonable care in the discharge of one or more of their duties to Plaintiff, Plaintiff suffered severe and permanent psychological and emotional injuries, including severe fear, shame, and humiliation. These injuries are permanent and ongoing in nature. Geffen Records exacerbated and aggravated Plaintiff's mental anguish, showing a callous disregard for her safety and well-being.

53. For the reasons alleged above, Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

54. Geffen Records' conduct was malicious, wanton, and willful.

55. For the reasons alleged above, Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

## CLAIM III: Negligence (against Geffen Records)

56. Plaintiff re-alleges and incorporates preceding paragraphs 1-30 as if fully set forth herein.

57. Geffen Records, its agents and/or employees negligently, carelessly, and recklessly failed to properly supervise their employees.

58. The sexual misconduct and resulting injuries were caused wholly and solely by reason of the negligence of Geffen Records, its agents and/or employees.

59.     Geffen Records owed a duty of care to Plaintiff as an employee.

60.     Geffen Records breached its duty or duties to Plaintiff by committing one or more of the following negligent acts or omissions, which directly and proximately caused Plaintiff's injuries:

a.     Negligently and carelessly failed to supervise and/or monitor Cartier during his employment;

b.     Negligently and carelessly failed to take corrective action against Cartier including suspensions or termination when Geffen Records knew or should have known that his conduct demonstrated an unfitness to serve as an employee;

c.     Negligently and carelessly retained Cartier as an employee Geffen Records knew or should have known that his conduct demonstrated an unfitness to serve as an employee;

d.     Negligently and carelessly failed to take appropriate actions with regard to Cartier's employment;

e.     Negligently and carelessly failed to terminate Cartier's employment;

f.     Negligently and carelessly failed to take appropriate actions to prevent further sexual harassment and assaults of female employees;

g.     Negligently and carelessly failed to implement and enforce Geffen Records' policies, procedures, and safety protocols;

h.     Negligently and carelessly failed to notify police and/or law enforcement of criminal acts known to Geffen Records and its agents, servants, and employees;

i.      Negligently and carelessly failed to have appropriate policies, procedures, and/or protocols in place that require all reported acts of sexual misconduct to be reported to police and/or law enforcement;

j.      Negligently and carelessly failed to have appropriate policies, procedures, and/or protocols in place that required all employees to be terminated for sexual misconduct toward other employees; and

k.      Negligently and carelessly committed other acts and omissions that increased the risk of harm to Plaintiff in ways that are not yet known to Plaintiff.

61.     Plaintiff has suffered mental anguish from Geffen Records' actions and inactions.

62.     As a direct and proximate result of the Geffen Records' failure to act with reasonable care in the discharge of one or more of their duties to Plaintiff, Plaintiff suffered severe and permanent psychological, emotional, and physical injuries, shame, and humiliation. These injuries are permanent and ongoing in nature. By failing to take any corrective action, the Geffen Records exacerbated and aggravated Plaintiff's mental anguish, showing a callous disregard for her safety and well-being.

63.     Geffen Records' actions were unreasonably dangerous by failing to protect its employees.

64.     Geffen Records' conduct was malicious, wanton, and willful.

65.     For the reasons alleged above, Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

**CLAIM IV: Sexual Harassment and Sexual Discrimination (against Geffen Records)**

66.     Plaintiff re-alleges and incorporates preceding paragraphs 1-30 as if fully set forth herein.

67.     Section 760.10 of the Florida Civil Rights Act ("FCRA") states in relevant part that "[i]t is an unlawful practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

68.     As part of its prohibitions against sex discrimination, the FCRA prohibits sexual harassment and assault, both through hostile work environment and *quid pro quo*.

69.     Geffen Records paid Ms. Doe to work with Cartier as a model for an album cover, exposing her to sexual harassment and assault instead, and explicitly and/or implicitly conditioned this business opportunity upon Ms. Doe accepting Cartier's sexual advances. At all times relevant, Cartier was acting with both the actual and apparent authority of Geffen Records, and as Ms. Doe's supervisor.

70.     The treatment to which Plaintiff to which was subjected was perpetrated against her as a result of her sex (female) and constituted actionable sexual harassment.

71.     As a result of the egregious sexual conduct perpetrated by Cartier, as agent and representative of Geffen Records, Plaintiff has experienced and will continue to experience significant financial and economic loss in the form of lost wages and lost benefits. Plaintiff has also experienced and will continue to experience emotional anguish, pain and suffering and loss of dignity damages. Plaintiff accordingly demands lost economic damages, lost wages, back and front pay, interest, the value and/or economic impact of lost benefits, attorney's fees and costs, and compensatory damages in an amount to be determined at trial.

### CLAIM V: Sexual Battery/Assault (against Cae Cartier)

72.     Plaintiff re-alleges and incorporates preceding paragraphs 1-30 as if fully set forth herein.

73.    Cae Cartier intentionally attempted, without authority or consent, to harm and/or offensively contact Plaintiff, and this attempt reasonably placed Plaintiff in fear and apprehension of such harm and/or offensive contact, which conduct proximately caused her injury and damage and were made possible through Geffen Records' actions and inactions.

74.    A harmful, offensive, unprivileged, and unpermitted contact with Plaintiff actually occurred as a result of this conduct.

75.    As a result, Plaintiff has experienced and will continue to experience emotional anguish, pain and suffering and loss of dignity damages.

76.    Cartier's conduct was malicious, wanton, and willful.

77.    For the reasons alleged above, Plaintiff seeks compensatory damages in an amount to be determined at trial, and an award of attorneys' fees, costs, and disbursements.

## JURY TRIAL DEMANDED

78.    Plaintiff hereby demands trial by jury of all triable issues.

## PRAYER FOR RELIEF

Plaintiff requests the following relief for the violations set forth in this Complaint:

a)  Compensatory damages, including those for mental anguish, in an amount to be proven at trial that exceeds the jurisdictional limits of all lower courts that may otherwise have jurisdiction;

b)  An imposition of penalties available under applicable laws, including but not limited to punitive damages;

c)  Litigation costs, expenses, and attorneys' fees; and

d)  Any other relief that the Court deems just and proper.

Dated: February 11, 2026

Respectfully submitted,

/s/ *Adriana Alcalde*

Adriana Alcalde, Esq. (FL Bar # 0609331)
EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, NY 10003
Tel: (212) 353-8700
Fax: (917) 591-2875
aalcalde@eandblaw.com